1999 UT 68

**Bonnie K. TINGEY, Plaintiff and Petitioner,**

v.

**Lu Ann CHRISTENSEN and Barr Christensen, Defendants and Respondents.**

No. 980149.

Supreme Court of Utah.

July 16, 1999.

Rehearing Denied Oct. 20, 1999.

Peter C. Collins, Salt Lake City, for petitioner.

J. Kent Holland, Salt Lake City, for respondent.

STEWART, Justice:

¶ 1 In this case, we review a memorandum decision of the Utah Court of Appeals affirming the trial court's denial of plaintiff Bonnie K. Tingey's motion for a new trial. We affirm.

## I. FACTS

¶ 2 On December 30, 1993, Tingey and Lu Ann Christensen were in a chain reaction car accident on 900 East in Salt Lake City. The Suburban Christensen drove hit a Subaru wagon stopped 4–10 feet behind Tingey's sedan and forced that wagon into the rear of Tingey's sedan. Evidence at trial established that Tingey's sedan had energy-absorbing bumpers and that the second crash was directly bumper-to-bumper, occurred at 5 to 14 miles per hour, and deployed the Subaru wagon's airbag. The wagon was damaged and its driver injured. Tingey's sedan was not visibly damaged; however, in Tingey's words, she "hurt almost everywhere on [her] body immediately following the accident." An ambulance took her to the LDS Hospital emergency room, where she was treated for neck and back pain and released shortly thereafter.

¶ 3 Tingey was already in great pain before the 1993 accident. She had previously been injured in several accidents: a February 1989 accident left short-lived injuries, and an October 1990 accident caused severe neck and shoulder pain, as well as headaches. She was also injured in two falls: one in 1991 and a second in 1992. Twenty-five days before the 1993 accident, at the University of Utah Hospital Pain Clinic, she indicated pain in her head, neck, shoulders, upper and lower back, arm, hands, and thigh. Tingey described her pain then as splitting, agonizing, pounding, torturing, constant, killing, and excruciating.

¶ 4 Tingey's pain continued and, according to her testimony, intensified after the 1993 accident. She sued Lu Ann and her father, Barr Christensen, claiming the accident caused injuries and aggravated preexisting injuries. The parties stipulated that Tingey received reasonable and necessary medical expenses of $33,669.34 after the accident, although they did not stipulate that such costs arose as a result of the accident.[1]

---

1. Before the case went to trial, the Christensens made a formal offer in judgment under Utah R. Civ. P. 68(b) to Tingey for $35,000. Tingey refused the offer, but mentioned the $35,000 settlement offer in her motion for new trial and on

appeal before this Court. The settlement offer is irrelevant to the issues Tingey raises on appeal, and mentioning it is inappropriate. "An offer [of judgment made before trial that is] not accepted shall be deemed withdrawn and evidence thereof

At trial, the Christensens conceded that Lu Ann negligently caused the accident and that her father Barr was jointly and severally liable under Utah Code Ann. § 53-3-212 (1998) because he knowingly allowed Lu Ann, a minor, to drive his vehicle. Thus, the only issue for the jury was the amount of damages.

¶ 5 The jury returned a verdict of $1,459.92 in special damages, an amount equal to Tingey's emergency room expenses on December 30. The jury initially awarded nothing for Tingey's pain and suffering in general damages; however, because it had awarded special damages, the trial judge instructed it to deliberate again and make some award for pain and suffering. The jury redeliberated and awarded only $1 in general damages. Because defendants in auto accidents are only liable for a plaintiff's personal injuries in excess of $3,000, see Utah Code Ann. § 31A-22-309, and because the verdict was less than that amount, the trial court entered judgment for the Christensens.

¶ 6 Tingey moved for a new trial on damages based on Utah R. Civ. P. 59(a)(5), (6), and (7). Respectively, these subsections permit a judge to grant a new trial if: a jury, under the influence of passion or prejudice, awards excessive or inadequate damages; the evidence is insufficient to justify the verdict or is against law; or there was an error in law. *See id.* Tingey's motion was denied, and she appealed. This Court transferred her appeal to the Utah Court of Appeals, which affirmed. Tingey filed a petition for a writ of certiorari, and we granted it. Before this Court, Tingey argues that (1) she should have been granted a new trial because the jury verdict was based on insufficient evidence, and (2) the trial court erred in refusing to give her proposed jury instruction regarding damages in aggravation of preexisting condition cases.[2]

## II. SUFFICIENCY OF THE EVIDENCE

■■■ ¶ 7 Tingey's first argument is that the Court of Appeals erred when it affirmed

the trial court's denial of her motion for a new trial under Utah R. Civ. P. 59(a)(6), which gives the trial court discretion to grant a new trial if evidence is insufficient to justify the verdict. *See* Utah R. Civ. P. 59(a)(6). This Court will reverse a trial court's denial of a motion for a new trial under rule 59(a)(6) only if it concludes that the evidence, when viewed most favorably for the prevailing party, is insufficient to support the verdict. The appealing party has the heavy burden of marshaling the evidence in support of the verdict and showing that the evidence, viewed in the light most favorable to the verdict, is insufficient. *See Scudder v. Kennecott Copper Corp.*, 886 P.2d 48, 52 (Utah 1994); *Heslop v. Bank of Utah*, 839 P.2d 828, 839 (Utah 1992); *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 799–800 (Utah 1991); *Hansen v. Stewart*, 761 P.2d 14, 17–18 (Utah 1988).

■■■ ¶ 8 Tingey argues that her evidence proved that the 1993 accident: (1) aggravated preexisting neck, shoulder, back, and head pain; and (2) caused temporomandibular joint ("TMJ") injuries. The $1,459.92 verdict, she claims, does not properly reflect the damages from these injuries. She has marshaled the evidence in favor of the verdict and has attempted to show its insufficiency.

¶ 9 After examining the record and counsels' arguments, we believe that the evidence was sufficient to support the verdict. As the Court of Appeals correctly stated:

In this case, the record contains evidence that the 1993 collision is not the sole or aggravating factor which caused Tingey's [injuries]. The evidence showed that the impact of the collision was estimated at 5–10 miles an hour, which was of such low impact that it caused no visible damage to Tingey's vehicle. Tingey had been involved in two accidents prior to the 1993 collision and had a history of chronic pain. In addition, expert testimony established

is not admissible except in a proceeding to determine costs." Utah R. Civ. P. 68(b).

**2.** Tingey does not argue here, as she did at the trial court and the Court of Appeals, that under

Utah R. Civ. P. 59(a)(5) the damages awarded her were inadequate because of the jury's passion or prejudice.

that Tingey's TMJ could have been caused by several factors including the earlier accidents, long term stress, and daily activities such as chewing, yawning, and grinding her teeth. Based on this evidence, the jury's verdict was reasonable.

## III. PROPOSED JURY INSTRUCTION

¶ 10 Tingey also contends that the trial court's refusal to give her proposed jury instruction on aggravation of preexisting conditions was reversible error. She states that her witnesses testified that her current pain was incapable of apportionment between preexisting conditions and injuries from the 1993 accident. She argues that, in light of the evidence, she was entitled to an instruction that a defendant is liable for the entire amount of a plaintiff's injuries when those injuries are incapable of apportionment. The trial court refused to give Tingey's proposed instruction to this effect. We accord a trial court's legal rulings, including a refusal to give a jury instruction, no deference and review for correctness. *See Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 452 (Utah 1993).

¶ 11 Tingey's proposed jury instruction states:

When a pre-existing condition exists which makes the injurious effect of a collision greater than it would have been in the absence of such a pre-existing condition, it is your duty, if possible, to apportion the amount of disability and impairment, pain and suffering, and other damages, between those attributable to the pre-existing condition and those attributable to the collision. *But if you find that the evidence does not permit such an apportionment, then you must determine that the entire*

disability, pain and suffering, and other damages, are attributable to the collision.[3]

(Emphasis added.) This instruction is based on *Colorado Jury Instructions* § 6:8 (1969). The emphasized portion of this instruction is the subject of Tingey's appeal.

¶ 12 The instruction actually given was Model Utah Jury Instruction, Civil 27.6 (1993), which does not mention the emphasized portion quoted above:

A person who has a pre-existing condition at the time of a collision is, of course, not entitled to recover special or general damages for that condition itself. However, the injured person is entitled to recover special and general damages for any aggravation of any such pre-existing condition proximately resulting from the collision.

This is true even if the injured person's condition made the injured person more susceptible to the possibility of ill-effects than a normally healthy person would have been, and even if a normally healthy person probably would not have suffered any substantial injury from the collision.

When a pre-existing condition is aggravated, damages for the aggravated condition are appropriately awarded only for the new or additional damages that are caused by the aggravation.

¶ 13 The proposition on which Tingey's proposed instruction rests heretofore has not been explicitly recognized in Utah case law. However, a number of other jurisdictions have recognized this rule. *See e.g., Newbury v. Vogel*, 151 Colo. 520, 379 P.2d 811, 813 (1963); *Hamblen v. Owens*, 127 Fla. 91, 172 So. 694, 696 (1937); *Kawamoto v. Yasutake*, 49 Haw. 42, 410 P.2d 976, 981 (1966); *Bush-*

---

**3.** Compare Tingey's proposed instruction with the Christensens' proposed instruction:

AGGRAVATION OF PRE–EXISTING CONDITION

If you find that before the accident Plaintiff, Bonnie Tingey, had an ailment or disability, and because of the accident his [sic] ailment or disability was aggravated, the plaintiff is entitled to recover for any disability or pain caused by such aggravation; but she is not entitled to recover for any ailment or disability which may have existed before the accident, or for any ailments or disabilities from which plain-

tiff may now be suffering which were not caused or contributed to by the accident.

Where a pre-existing condition exists which has been aggravated by the accident it is your duty, if possible, to apportion the amount of disability and pain between that caused by the pre-existing condition and that caused by the accident. *But if you find that the evidence does not permit such an apportionment, then the defendant is legally responsible for the entire ailment or disability.*

(Emphasis added.) This instruction is based on *Colorado Jury Instructions* § 6:8 (2d ed.1980).

*ong v. Kamiah Grain, Inc.,* 96 Idaho 659, 534 P.2d 1099, 1101 (1975) (citing *Blaine v. Byers,* 91 Idaho 665, 429 P.2d 397, 405–06 (1967)); *Lovely v. Allstate Ins. Co.,* 658 A.2d 1091, 1092–93 (Me.1995); *McNabb v. Green Real Estate Co.,* 62 Mich.App. 500, 233 N.W.2d 811, 818 (1975); *Bigley v. Craven,* 769 P.2d 892, 898 (Wyo.1989); *see also Tolan v. ERA Helicopters, Inc.,* 699 P.2d 1265, 1272 (Alaska 1985) (citing *LaMoureaux v. Totem Ocean Trailer Express, Inc.,* 632 P.2d 539, 543–45 (Alaska 1981)).

¶ 14  The proposition follows from several legal principles: first, a tortfeasor takes a tort victim as he or she finds the victim, *see Brunson v. Strong,* 17 Utah 2d 364, 412 P.2d 451, 453 (1966); second, a tortfeasor should bear the burden of uncertainty in the amount of a tort victim's damages, *see Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.,* 709 P.2d 330, 336 (Utah 1985);[4] and third, once the fact of damage is established, "a defendant should not escape liability because the amount of damage cannot be proved with precision." *Winsness v. M.J. Conoco Distrib., Inc.,* 593 P.2d 1303, 1306 (Utah 1979).

¶ 15  The proposed rule of law is correct, and we adopt it. We hold that if the jury can find a reasonable basis for apportioning damages between a preexisting condition and a subsequent tort, it should do so; however, if the jury finds it impossible to apportion damages, it should find that the tortfeasor is liable for the entire amount of damages. The trial court erred in not giving the proposed instruction, and the Court of Appeals was incorrect in holding otherwise.

¶ 16  Nevertheless, the error was harmless. Errors require reversal only if confidence in the jury's verdict is undermined. *See Harline v. Barker,* 912 P.2d 433, 442 (Utah 1996). "We may reverse a trial court judgment only if there is a reasonable likelihood that, absent the error, there would have been a result more favorable to the complaining party." *In re Estate of Kesler,* 702 P.2d 86, 96 (Utah 1985); *see Lee v.*

*Mitchell Funeral Home Ambulance Serv.,* 606 P.2d 259, 260–61 (Utah 1980). A court's error in refusing to give a jury instruction is reversible "only if it tends to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advises the jury on the law." *Kesler,* 702 P.2d at 96–97.

¶ 17  Despite the trial court's error, our confidence in the jury's verdict in this case is not undermined. Under the rule of law adopted today, the jury can award a plaintiff full, unapportioned damages only if it determines that damages are incapable of apportionment. However, in this case, the jury made clear that it did not believe Tingey suffered any pain and suffering from the 1993 accident. This is shown by its initial award of $0 in general damages and its subsequent award of only $1 in general damages after being specifically instructed to award something for Tingey's pain and suffering from the 1993 accident. Thus, after hearing substantial evidence on Tingey's injuries and discussing twice whether her pain and suffering arose from the 1993 accident or her previous injuries, the jury awarded Tingey only nominal damages for pain and suffering from the 1993 accident. This is not an unusual award, especially in rear-end auto accidents with conflicting evidence on damages. *See* 22 Am.Jur.2d *Damages* § 42 (1988).

¶ 18  As mentioned above, this verdict is consistent with the evidence. Tingey had been severely injured in a previous accident and was in considerable pain prior to the 1993 accident: twenty-five days before the accident, she described her pain as splitting, agonizing, pounding, torturing, constant, killing, and excruciating. Further, the evidence shows that the 1993 accident was minor: the speed of the car that hit Tingey's car was estimated to be from 5–14 miles per hour; the impact was direct, bumper-to-bumper, and Tingey's energy-absorbing bumpers buffered some of the impact; and the impact was so minor that Tingey's car was not visibly damaged. In light of the minor nature of the 1993 accident, the jury reasonably determined that Tingey's pain and suffering was

---

**4.**  Other states have relied upon these two policies to adopt the rule of law proposed in Tingey's instruction. *See Lovely,* 658 A.2d at 1093;

*McNabb,* 233 N.W.2d at 820; *see also Bigley,* 769 P.2d at 896.

entirely preexisting and did not stem at all from the 1993 accident.

¶ 19 Tingey argues that if her instruction had been given, the jury would have found that the damages were incapable of apportionment and would have awarded her the unapportioned sum of her current and preexisting listing damages. We think that conclusion is unsupportable. The jury clearly believed Tingey suffered no pain and suffering from the 1993 accident. That determination is supported by the evidence and its finding of no damages for pain and suffering. We simply cannot say that the verdict would have been more favorable to Tingey had her proposed instruction been given. The trial court's error in refusing to give the instruction does not undermine our confidence in the verdict. Thus, the error is harmless.

¶ 20 Affirmed.

¶ 21 Chief Justice HOWE and Justice ZIMMERMAN concur in Justice STEWART's opinion.

¶ 22 Justice RUSSON concurs in the result.

¶ 23 Having disqualified herself, Associate Chief Justice DURHAM does not participate herein.

