# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVEN C. WHITE,
        *Plaintiff-Appellee,*

v.

CITY OF SPARKS
        *Defendant-Appellant.*

No. 05-15582

D.C. No.
CV-03-00251-
DWH/RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
David W. Hagen, District Judge, Presiding

Argued and Submitted
February 16, 2007—San Francisco, California

Filed August 29, 2007

Before: Betty B. Fletcher and Richard R. Clifton,
Circuit Judges, and Edward F. Shea,* District Judge.

Opinion by Judge B. Fletcher

---

*The Honorable Edward F. Shea, United States District Judge for the
Eastern District of Washington, sitting by designation.

10871

**COUNSEL**

Thomas F. Riley, Senior Assistant City Attorney, Sparks, Nevada, for the defendant-appellant.

Terri Keyser-Cooper (argued), Law Office of Terri Keyser-Cooper, Reno, Nevada, and Diane K. Vaillancourt (briefed), Law Office of Diane K. Vaillancourt, Santa Cruz, California, for the plaintiff-appellee.

**OPINION**

B. FLETCHER, Circuit Judge:

This appeal presents the question of what protection the First Amendment extends to the sale by an artist of his paintings. We hold that an artist's sale of his original artwork constitutes speech protected under the First Amendment.

### I.

Appellee Steven C. White ("White") is an itinerant artist who earns a living by setting up an easel on a city's sidewalks and in parks and selling his paintings to passersby who take an interest in his work. A painter of nature scenes, White believes his paintings convey, among other messages, the message that human beings are driving their spiritual brothers and sisters, the animals, into extinction.

The city of Sparks, Nevada ("Sparks") prohibits the sale of merchandise in its parks and limits sales in the redevelopment area known as Victorian Square to those vendors having permits under Sparks Municipal Code §§ 5.59 et seq. For those without vendor's permits, Sparks makes a limited exception allowing the display of merchandise in its parks and Victorian Square as well as the sale (in both places) of items that have received the pre-approval of city employees through a First Amendment exception to the vendor-permitting ordinances ("First Amendment exception" or "pre-approval policy"). According to the city, to gain such preapproval an item must be submitted to the city and determined by city officials to convey an express or obvious religious, political, philosophical, or ideological message under *Gaudiya Vaishnava Society v. City and County of San Francisco*, 952 F.2d 1059, 1063 (9th Cir. 1990) (extending First Amendment protection to "the sale of merchandise which carries or constitutes a political, religious, philosophical or ideological message").[1]

White brought a facial challenge to Sparks's vendor-permitting scheme. He then moved for summary judgment on the question of whether he may sell his paintings on the same

---

[1]The city has presented no evidence confirming the existence of this First Amendment exception except for the representations of counsel before this court and before the district court. However, because the city has conceded the exception, we, like the district court, will presume the existence of the policy.

basis as he may display them, i.e., free of restraint. The city opposed on the ground that White's paintings are unprotected by the First Amendment because they do not patently express a religious, ideological, political, or philosophical message.

Agreeing for the most part with White and reading *Gaudiya* broadly*,* the district court granted White's motions[2] to the extent he requested a ruling that his paintings expressed a message warranting First Amendment protection. To the extent White requested a global ruling that all visual art is per se constitutionally protected, the district court declined to extend its ruling beyond protection of White's paintings. Finally, the district court concluded that Sparks's pre-approval policy constituted an unconstitutional prior restraint because it failed to include objective criteria for approving or rejecting a piece of artwork. Sparks appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.[3]

## II.

We review de novo a district court's grant of partial summary judgment, *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1116 (9th Cir. 2004), and may affirm on any ground supported by the record, *Venetian Casino Resort v. Local Joint Executive Bd. of Las Vegas*, 257 F.3d 937, 941 (9th Cir. 2001). After "viewing the evidence in the light most favorable to the nonmoving party," we determine "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

---

[2]White filed separate motions for the city's parks and for Victorian Square. As they present the same First Amendment question, we analyze the motions together.

[3]The district court's partial grant of summary judgment and denial of the rest constituted a final judgment in this case, as all other claims have been resolved. Sparks appeals the partial grant. White does not appeal the partial denial.

## III.

The parties argue over law, not fact. To that extent, summary judgment is appropriate because no genuine issue of material fact existed. We therefore turn to the question of whether the district court "correctly applied the relevant substantive law." *Id.* at 1097.

## A.

Sparks argues that the First Amendment protects the sale of paintings in public fora only if the paintings convey an explicit—or an implicit but obvious—message that fits into one of the categories we established in *Gaudiya*. We disagree.

**[1]** In *Gaudiya*, we held that First Amendment protection extended to the "sale of merchandise which is inextricably intertwined with a statement carrying a religious, political, philosophical or ideological message." 952 F.2d at 1066. The merchandise at issue in *Gaudiya*—clothing, jewelry, and stuffed animals sold as fundraisers by charities and advocacy groups—lacked inherent expressive value and gained expressive value only from its sale being "inextricably intertwined" with pure speech. *Id.* at 1064. To the extent that visual art is inherently expressive, the *Gaudiya* test is inapplicable.

**[2]** While not having spoken directly on the protections afforded visual art, the Supreme Court has been clear that the arts and entertainment constitute protected forms of expression under the First Amendment. *See Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989) (music without words); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 65-66 (1981) (dance); *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546 (1975) (theatre); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932-34 (1975) (topless dancing); *Miller v. California*, 413 U.S. 15, 34-35 (1973) (serious artistic work, unless obscene in the legal sense); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952) (movies).

**[3]** Against this backdrop, it is clear that White's self-expression through painting constitutes expression protected by the First Amendment. In painting, an artist conveys his sense of form, topic, and perspective. A painting may express a clear social position, as with Picasso's condemnation of the horrors of war in *Guernica*, or may express the artist's vision of movement and color, as with "the unquestionably shielded painting of Jackson Pollock." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569 (1995). Any artist's original painting holds potential to "affect public attitudes," *Joseph Burstyn, Inc.*, 343 U.S. at 501, by spurring thoughtful reflection in and discussion among its viewers. So long as it is an artist's self-expression, a painting will be protected under the First Amendment, because it expresses the artist's perspective.[4]

In holding that the First Amendment protects an artist's original paintings, we join two of our sister circuits. *See ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) (holding that "[t]he protection of the First Amendment . . . includes . . . music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures"); *Bery v. City of New York*, 97 F.3d 689, 696 (2d Cir. 1996) ("[P]aintings, photographs, prints and sculptures . . . always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection."); *see also Piarowski v. Ill. Cmty Coll. Dist. 515*, 759 F.2d 625, 628-32 (7th Cir. 1985) (holding that stained glass windows, as "art for art's sake," were protected under the First Amendment).

The city's argument that the message conveyed must be either explicit or implicit but obvious in order to merit protec-

---

[4]We expressly reserve the question whether all paintings merit First Amendment protection. We are not asked to decide the protection accorded to paintings that are copies of another artist's work or paintings done in an art factory setting where the works are mass-produced by the artist or others.

tion must fail. As the Court has explained, "a narrow, suc-cinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a par-ticularized message would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Hurley*, 515 U.S. at 569 (internal quotation marks and citation omit-ted).

Nor are we convinced by the city's argument that White's sale of his paintings removes them from the ambit of pro-tected expression. "[T]he degree of First Amendment protec-tion is not diminished merely because the [protected expression] is sold rather than given away." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 756 n.5 (1988); *see also Riley v. Nat'l Fed'n of the Blind of N. C.*, 487 U.S. 781, 801 (1988) ("It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak."); *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633 (1980).

Finally, even purely commercial speech is entitled to sig-nificant First Amendment protection. *See Glickman v. Wile-man Bros. & Elliott, Inc.*, 521 U.S. 457, 480-81 (1997); *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 421-23 (1993); *Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976). Purely commercial speech is "speech which does 'no more than propose a com-mercial transaction.' " *Virginia Bd. of Pharmacy*, 425 U.S. at 762 (*quoting Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 385 (1973)). White's paint-ings, which communicate his vision of the sanctity of nature, do more than propose a commercial transaction and therefore are not commercial speech.

**[4]** In sum, we agree with the district court that the city applied the wrong First Amendment standard in its First

Amendment exception to its vendor-permitting policy and hold that an artist's sale of his original paintings is entitled to First Amendment protection.[5]

## B.

**[5]** Sparks contends that the district court, in ruling that White's paintings were protected under the First Amendment, usurped the city's authority to make that determination in the first instance. This argument ignores our tripartite structure of both state and federal government. While the executive branch must both interpret and apply the law, that authority does not strip the judiciary of its authority to review laws at issue in cases properly before it to determine, for example, whether they impermissibly tread on First Amendment rights. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is a proposition too plain to be contested, that the constitution controls any legislative act repugnant to it."); *see also Gaudiya*, 952 F.2d at 1065 (ruling, in a facial challenge to an ordinance, that the merchandise at issue was protected).

## C.

**[6]** Finally, Sparks argues that White lacks standing to challenge the city's permitting scheme because he never submitted his artwork to the city for review. Because Sparks raised this argument for the first time in its reply brief to this court, it has waived the argument. *See Holland Am. Line Inc. v. Wrätsilä N. Am., Inc.*, 485 F.3d 450, 457 (9th Cir. 2007) (holding that appellant waived an argument by failing to raise it before the district court).

---

[5]Because we set out a materially different First Amendment standard than that the city had articulated, we do not reach the city's arguments that use of a dictionary and common sense to define the *Gaudiya* categories sufficiently constrained official discretion to avoid creating a risk of censorship.

**IV.**

For these reasons, the district court's grants of partial summary judgment are **AFFIRMED.**